(No. 11119.—Reversed and remanded.)
Sophia M. Rossow, Exrx., Plaintiff in Error, *vs.* William G. Peters *et al.* Defendants in Error.

*Opinion filed February 21, 1917—Rehearing denied April 5, 1917.*

Trusts—*when trust will be declared though purpose of conveying legal title was to hinder creditor.* Even though the evidence tends to show that the person who paid the full consideration for land had the legal title conveyed to his son-in-law to hinder a creditor, a trust may be declared and a conveyance of the legal title decreed where it is shown that the complainant paid only $900 in cash for the property at the time he bought it, that he moved into the property and occupied it as a homestead for some eight years, during which time he paid the remaining $400 of the consideration, and that at the time the deed was made he had only one creditor, who was afterwards paid.

Writ of Error to the Circuit Court of Kankakee county; the Hon. Arthur W. Deselm, Judge, presiding.

Frank J. Burns, and James T. Burns, for plaintiff in error.

J. Bert. Miller, for defendants in error.

Mr. Justice Farmer delivered the opinion of the court:

This is a bill in chancery filed by John Rossow to declare him to be the equitable owner of a house and lot in Chebanse, Illinois, and to compel the defendant William G. Peters, who held the legal title, to convey the premises to complainant. The bill was filed in October, 1915. Rossow died in January, 1916, before the cause was heard, leaving a last will and testament, making his widow, Sophia M. Rossow, sole beneficiary and executrix of his will. After his death she was substituted as party complainant.

John Rossow was the father-in-law of Peters, whose wife was Rossow's only child. At the time of his death Rossow was seventy or more years of age. He was an ignorant, illiterate man and for some years had been an em-

ployee of his son-in-law. In March, 1906, he contracted for the purchase of a house and lot in Chebanse for a consideration of $1300 and paid $100 in cash. He and his wife moved into the property before the deed was made, March 17, 1906. He lived in the property with his wife until her death and continued to occupy it until August, 1914, when he married again and went to live in property owned by his wife. The bill alleges that the deed to the property Rossow purchased was made to his son-in-law without Rossow's knowledge. This is denied by the answer. The defense set up by the answer is that Rossow had creditors, and that he had the deed made to his son-in-law to defraud his creditors. In addition to the $100 paid at the time the contract for the purchase of the property was made Rossow paid $800 at the time the deed was executed. He appears not to have been present at the time the conveyance was made, and his son-in-law, Peters, gave a note for $400, secured by a mortgage on the premises, for the balance of the purchase price, which note Rossow afterwards paid. It is not denied he paid the full consideration for the purchase of the property. Rossow's deposition was taken before his death, and he testified he did not learn until about a year before that the conveyance was made to his son-in-law; that he was sick at that time and wanted to borrow money on the property, and then discovered for the first time that the title was in Peters, who refused to convey it to Rossow, whereupon he brought this suit. It was denied by Rossow that he had the deed made to Peters to hinder and delay creditors, and the proof that he had creditors is not very clear and satisfactory. His brother testified that Rossow told him he had the deed made to Peters on account of creditors, and a lawyer whom he consulted about getting the title in his own name testified Rossow told him that was the reason he had the deed made to Peters. The lawyer's testimony was objected to as being a privileged communication, but it was insisted that because when Rossow's depo-

sition was taken he was cross-examined about what he had said to the lawyer and no objection was then made upon the specific ground that it was a confidential communication, the privilege was waived and the testimony of the lawyer was competent. The only creditor the proof tended to show Rossow had was a man named Steifel, to whom he owed $200, and Rossow testified he paid him off some years before his deposition was taken.

If it be conceded that it was proven by competent testimony that Rossow said he had the deed made to Peters to hinder and delay his creditors, was it, in fact, a fraud? The bill alleged, and the proof sustains the allegation, that Rossow resided in the property as his homestead from about the first of March, 1906, (which was before the deed was made,) until August, 1914, and that since leaving it he had collected the rents from it. He paid all taxes and assessments against the property from the time he bought it and at his own expense made all necessary repairs. He was entitled to a homestead to the extent in value of $1000, which creditors could not take from him. He only put $900 cash into the property at the time he bought it. A homestead of the value of $1000 is exempt from sale for the payment of debts, and the owner of it may convey it without interference from his creditors. When the deed was made Rossow's interest was not liable to creditors, and if Rossow had taken the title in his own name he could have conveyed it free from their interference. Whatever he may have thought about it, he did not defraud creditors by having the deed made to Peters.

Cases involving conveyances made to defraud or hinder and delay creditors have usually been suits begun by the creditor, and in all such cases it has been held a conveyance of property exempt from the payment of debts is not fraudulent as to creditors. A creditor has no interest in the disposition of such property and is not hindered or delayed by its conveyance. (*Washburn* v. *Goodheart*, 88 Ill. 229;

*Moore* v. *Flynn,* 135 id. 74; *Nance* v. *Nance,* 5 Am. St. Rep. 378; *Bogan* v. *Cleveland,* 20 id. 158.) Even the fraudulent acts of the party entitled to a homestead are not allowed to divest that right. (*Gruhn* v. *Richardson,* 128 Ill. 178.) That can only be accomplished in the manner provided by statute. (*Leupold* v. *Krause,* 95 Ill. 440; *Hamby* v. *Lane,* 89 Am. St. Rep. 967.) "A debtor, in the disposition of his property, can commit a fraud upon his creditors only by disposing of such of his property as the creditors may have a legal right to look to for the satisfaction of their claims, and therefore a debtor cannot commit a fraud upon his creditors by disposing of his homestead." (20 Cyc. 385.) The most that can be claimed for the proof here is, that Rossow had one creditor to whom he owed $200 at the time and that he had the property conveyed to his son-in-law for that reason. The property, at the time of the conveyance, being exempt from the claim of creditors, they had no interest in it and were in no way injured or defrauded by it.

It may be said Rossow intended by the conveyance to defraud his creditor, and although that was not its effect he cannot compel a re-conveyance. In other words, that a conveyance made with intent to defraud creditors, although the conveyance was of property exempt from the claims of creditors and was therefore no fraud upon them, can no more be set aside and the grantor invested with the title than if the transaction had operated to defraud or hinder and delay creditors. On this question the cases are conflicting. "Some decisions hold that such conveyance is fraudulent and the property cannot be recovered by the grantor, while others hold that since none is harmed but the grantor it should not be deemed a fraudulent conveyance and he should be permitted to recover the property so conveyed." (12 R. C. L. 611.) The decisions will be found collected in a note to *Carson* v. *Beliles,* 1 L. R. A. (N. S.) 1007. As to a debtor's homestead there are no creditors

and there can be no fraudulent disposition of it. (*Ferguson* v: *Little Rock Trust Co.* 99 Ark. 45; Ann. Cas. 1913*a*, 960.) The obvious reasons for this rule against the grantor attacking a conveyance made by him in fraud of the rights of creditors do not obtain where no creditors or third persons are injured or defrauded, and under the circumstances of this case as disclosed by the proof we think the rule cannot be invoked against the relief prayed for in the bill.

The decree is reversed and the cause remanded, with directions to grant the relief prayed.

*Reversed and remanded, with directions.*