Hortense Steiner, Plaintiff-Appellee, Cross-Appellant, v. Jane Lawson and Peter Lawson, Her Husband, Myron J. Rudd, and C. Bradshaw, Inc., an Illinois Corporation, Defendants-Appellants, Cross-Appellees.

Gen. No. 50,248.

First District, First Division.

May 23; 1966.

Rehearing denied June 27, 1966.

Slater and Kahan, of Chicago, for defendants-appellants.

Brown, Dashow and Langeluttig, of Chicago (Norman H. Arons, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an action between two sisters to set aside a recorded deed to a lot which had been owned by their deceased father. Defendants appeal from a decree which declared a constructive trust in favor of plaintiff, as owner of an undivided one-third interest. Plaintiff cross-appeals, contending that she should have been adjudged owner of a one-half interest.

Plaintiff, Hortense Steiner, and defendant, Jane Lawson, her sister, were the children and sole heirs at law

of Abe and Rose Weil. On January 17, 1934, Abe Weil and his wife Rose conveyed three parcels of real estate to Myron J. Rudd, who was the brother of Rose Weil, by quitclaim deeds recorded on January 19, 1934. Abe Weil died intestate shortly thereafter on March 13, 1934, and Rose died intestate on January 28, 1948. After the death of Abe Weil, Myron J. Rudd and his wife conveyed the three parcels to Jane G. Weil (now Lawson) by three separate deeds dated March 27, 1934. These deeds were recorded on various dates. The deed to the subject parcel, the southeast corner of 154th and Vine Street, Harvey, Illinois, was recorded on October 21, 1937. This is the deed plaintiff seeks to be "adjudged a nullity and be removed as a cloud on the title."

The complaint alleges that Rudd paid no consideration for the conveyance of the three parcels and took title "solely as nominee for Abe Weil, or in the event of the death of Abe Weil for the family of Abe Weil, as will appear by reference to the affidavit of said Myron J. Rudd, dated August 24, 1961." A copy of the affidavit is attached to the complaint and made a part thereof.

The amended answer of Jane Lawson admits that the quitclaim deed to her of the subject premises was dated March 27, 1934, and was recorded on October 21, 1937, and alleges there can be no recovery "under this supposed trust in view of the Statute of Frauds." It is further alleged that the subject premises "had been given to Jane Weil Lawson as a gift by Rose Weil, their mother, with the approval and instructions of Abe Weil, their father . . . as part of her dowry."

The matter was referred to a master in chancery. The master's report states:

"Myron Rudd [a witness for plaintiff] testified in a straightforward and credible manner that Abe Weil, the husband of Rudd's sister, Rose, came to

396

him in 1934 and advised him that Weil had conveyed to Rudd three parcels of real estate which Weil wanted Rudd to hold for Weil's benefit and, in the event that something happened to Weil, then for the benefit of Weil's wife and children, that after Weil's death, Rudd found that holding the titles was a source of annoyance and requested his sister, Rose Weil, to arrange for the transfer of the properties from him, that Rose Weil brought to Rudd and his wife blank deed forms which Rudd and his wife signed without filling in the forms and without appearing before a notary public, which signed deed forms Rose Weil took with her.

"Two of the deeds in question, including one concerning the property involved in this cause, appear of record in the Office of the Recorder of Deeds of Cook County, are complete in form and bear certificates of acknowledgment made by a notary public whose authority as a notary public has not been questioned here, and show as grantee, Jane Gertrude Weil, now Jane Lawson, a defendant, without any limitation as to her interest.

"The foregoing testimony and evidence pose several questions as to the competency of the testimony of Myron Rudd, as follows:

"(1) Inasmuch as the deed to the subject property appears of record in the Office of the Recorder of Deeds of Cook County in completed forms and bears a certificate of acknowledgment before a notary public, and this constitutes prima facie evidence of the execution and delivery of the deed, may the execution thereof be impeached by the sole testimony of a grantor, in this case Myron Rudd, that the deed was signed in blank, even though the law is that a deed signed in blank is void?

"(A) . . . In our case we have only the testimony of Myron Rudd, a grantor, and his unsup-

397

ported testimony cannot overcome the certificate of the notary public that the deed was executed and acknowledged. . . .

"(B) It follows, therefore, that I cannot consider Rudd's testimony as to the execution and acknowledgment of the deed which he and his wife signed, and since there is no other evidence on this point, I must conclude that the deed from the Rudds to Jane Gertrude Weil was duly executed, delivered and acknowledged.

"(2) Since I must conclude that the deed from the Rudds to Jane Weil was duly executed, delivered and acknowledged, is Myron Rudd's testimony, given almost 30 years after the deed, that he had taken title as a trustee acceptable?

"(A) The law is that a trustee having divested himself of title by an absolute conveyance cannot thereafter convert the grantee into a trustee, by his written or oral declarations, or by admitting the trust. . . .

"Accordingly, in my Findings of Fact hereinafter made, I have not considered the testimony of Myron Rudd as to the form of the deed or his testimony that the absolute conveyances to him were in trust."

The conclusions of the master included (1) that a release agreement between the sisters of December 10, 1948, "while general in its terms, must be considered to be limited to the property referred to in the recital and as concerning only a disposition of the mother's estate," and not a bar to plaintiff's claims to the subject property; (2) "while Hortense Steiner has known about the subject property since 1948, there has been no evidence showing a change of position by the defendant, Jane Lawson, in reliance on Hortense Steiner's non-action . . ."; and (3) "there is no evidence to establish a constructive trust against the defendant, Jane Lawson, . . . and the claim by Jane Lawson of a gift from her

■■■■■■■■■■

mother, fortified by the presumption of a gift because she was a natural object of the bounty of her mother, . . . even though there was another child, is not overcome in any manner by any evidence (clear, convincing or satisfactory . . . ), that Jane Gertrude Weil took an absolute conveyance charged with a trust in favor of her mother (who was alive in 1937), her sister, and herself. There is no evidence whatsoever as to the circumstances under which she took the conveyance, and necessarily no evidence that she induced the conveyance, or took with notice of limitations in favor of her sister or mother, or that she made any promises or representations to get the title," and "the present cause should be dismissed for want of equity."

The trial court entered a decree which sustained part of plaintiff's exceptions to the master's report and found:

> "1. That the testimony of Myron Rudd was competent to establish and did establish a constructive trust imposed on Myron Rudd in favor of Abe Weil, with respect to the premises involved herein and hereinafter described, by virtue of the confidence and trust reposed in Myron Rudd by Abe Weil at the time the latter conveyed the said premises to Myron Rudd.
>
> "2. After the death of Abe Weil, Rose Weil and her two (2) daughters, Hortense Weil Steiner and Jane Weil Lawson, each succeeded to a one-third interest in said property.
>
> "3. That Myron Rudd, as such constructive trustee, could not and did not in equity convey more than a one-third interest in said premises to the defendant, Jane Weil Lawson, after the death of Abe Weil.
>
> "4. That Jane Weil Lawson did not pay any consideration for said deed from Myron Rudd and does not rely thereon in claiming title to said premises,

399

but claims the said property as the result of a gift thereof from her mother, Rose Weil.

"5. That Rose Weil, could not give or convey to Jane Weil Lawson, more than a one-third interest in said premises.

"6. That plaintiff, Hortense Steiner, since the death of her father, has been, and is now entitled to a one-third interest in said premises, together with one-third of the rents, issues and profits therefrom and, as found by the Master, has not been guilty of laches in asserting her rights thereto."

The decree adjudged Hortense W. Steiner to be the owner of an undivided one-third interest in the premises and directed defendants Jane Lawson and Peter Lawson, her husband, to make such a conveyance to plaintiff.

■ From this record it is fairly evident, and apparently not disputed, that Weil made the three conveyances to Rudd as a nominee only and without any consideration. No gift was intended to Rudd, and Weil retained the equitable ownership. Rudd never received any deeds or papers from Weil and did not know of the conveyances until he was so informed by Weil and, as found by the master, "Weil wanted Rudd to hold for Weil's benefit and, in the event that something happened to Weil, then for the benefit of Weil's wife and children." There is no evidence of fraud or a confidential relationship, and the decree states that plaintiff, "as found by the Master, has not been guilty of laches in asserting her rights thereto." Weil attempted to set up in Rudd a facade of complete ownership which, we infer, was intended to hide the beneficial ownership previously enjoyed by Weil. Obviously, an express trust was not created by the conveyances by Weil to Rudd, and this point requires no discussion.

On appeal, defendants contend (1) that no constructive trust was established by the conveyance from Weil

400

to Rudd, because "none of the elements necessary to establish the existence of such a trust have been proved"; (2) a deed in completed form and bearing a certificate of acknowledgment before a notary public, whose authority as a notary public has not been questioned, is deemed duly executed, delivered and acknowledged, and the said deed cannot be set aside by the unsupported testimony of the grantor; and (3) a trustee, having divested himself of title by an absolute conveyance, cannot thereafter convert the grantee into a trustee by the grantor's written or oral declarations or by admitting the trust.

■ We note here that defendants' brief did not include or argue the question of laches. Therefore, we have not considered it and have accepted both the master's and chancellor's findings on this point.

Plaintiff contends in substance that "Myron Rudd stood in a fiduciary capacity to Abe Weil when Rudd agreed to accept the three parcels of real estate . . . ," and "since Rudd was a constructive trustee," the rule that "a deed bearing acknowledgment before a Notary Public is presumed to be duly executed and cannot be set aside by the unsupported testimony of the grantor is not applicable here."

■ Initially, we observe that this record portrays a situation which calls for the application of the observations made by Mr. Justice Schwartz of this court in Merschat v. Merschat, 1 Ill App2d 429, 117 NE2d 868 (1954), at p 440:

> "In our time . . . formal land titles are no longer held in such high sanctity by courts, laymen, or lawyers. Such titles are frequently put in the names of nominees or 'strawmen,' or a title may be in the name of one when, as a matter of fact, he has an interest along with many. . . . This is the realistic conception which we must take of real estate trans-

401

actions today. Any other view can often lead to great injustice. This does not mean that this court departs from accepted rules of long standing with respect to proof required in cases of resulting trusts."

■ ■ We agree with the contention of defendants that "none of the elements necessary to establish the existence of" a constructive trust have been proved. The Illinois cases involving constructive trusts are divided into two general classes: "One consisting of those cases in which actual fraud is considered as an equitable ground for raising a constructive trust, and the other consisting of those cases in which the existence of a confidential relation and the subsequent abuse of the confidence reposed is considered sufficient to take the case out of the statute." (Miller v. Miller, 266 Ill 522, 533, 107 NE 821 (1915).) To justify the declaration of a constructive trust, plaintiff was required to "plead and prove either actual fraud or the abuse of a confidential relationship." (Hanley v. Hanley, 14 Ill2d 566, 571, 152 NE2d 879 (1958).) In the absence of a showing of a fiduciary relationship between Weil and Rudd, and fraud in its breach, there can be no constructive trust. (Fender v. Yagemann, 29 Ill2d 205, 210, 193 NE2d 794 (1963).) As there is no evidence in this record of fraud on behalf of Rudd or that he abused any confidential relationship, the proof here does not show that a constructive trust arose.

■ If any trust arose because of the conveyances from Weil to Rudd, it must have been a resulting trust. The subsequent parol agreement of Rudd to hold title for Weil did not prevent an implied resulting trust being acknowledged and did not destroy any resulting trust already raised in favor of Weil. See Mauricau v. Haugen, 387 Ill 186, 56 NE2d 367 (1944), at p 195:

". . . where a contract was made after the trust had arisen, the court said: 'Where the transaction is such that at the moment the title passes a resulting trust would arise in the absence of such parol agreement, such agreement will not prevent a trust resulting. . . . In this case not only did the trust arise by operation of law, but it was adequately manifested by writing . . . .' . . . '. . . where the transaction is such that at the moment the title passes either a resulting or constructive trust would arise in the absence of a parol agreement, such agreement will not prevent a trust arising. . . . The intention of the parties in the premises may be shown by proof of the parol agreement in accordance with which the title is taken.' "

■■■■■■ Resulting trusts, as a rule, generally arise where one person furnishes the consideration and the title is taken in another. As Weil in effect furnished the consideration here, we have taken "the resulting trust" pronouncements of our Supreme Court as the guidelines to be applied here. In Hanley v. Hanley, 14 Ill2d 566, 152 NE2d 879, it is said (p 571):

"A resulting trust arises by operation of law and is founded on the presumed intent of the parties ascertained from their acts and attendant facts and circumstances, and usually comes into existence where one person furnishes the consideration, or an aliquot part thereof, for the purchase of property while the title is taken in the name of another, (Wright v. Wright, 2 Ill2d 246; Craven v. Craven, 407 Ill 252; Tuntland v. Haugen, 399 Ill 595,) and it arises, if at all, at the instant legal title is taken and vests. (Tilley v. Shippee, 12 Ill2d 616.) Acts of the alleged trustee or equitable owner subsequent to the taking of title, have no bearing upon the ques-

tion of whether a resulting trust was raised. (Wright v. Wright, 2 Ill2d 246; Craven v. Craven, 407 Ill 252; Briscoe v. Price, 275 Ill 63.) . . . To justify the declaration of such trust, the evidence must be clear, convincing and unmistakable. Scanlon v. Scanlon, 6 Ill2d 224; Tuntland v. Haugen, 399 Ill 595; Cook v. Blazis, 365 Ill 625."

See also:

"[A] resulting trust of the nature here involved cannot be predicated upon a condition subsequent but must arise at the instant the purchase price is paid by one and title is taken in the name of another, if it arises at all." Bowman v. Pettersen, 410 Ill 519, 531, 102 NE2d 787 (1952).

"A resulting trust is based upon the presumed intention of the parties distilled from their conduct; it comes into being at the instant the title vests, or not at all." Fender v. Yagemann, 29 Ill2d 205, 208.

"A resulting trust may be found where one person's money has been invested in land and the conveyance taken in the name of another. 'If the fact exists, by mere operation of law a trust is raised in favor of the party whose money was paid to purchase the land, either to the whole or his equivalent portion thereof.'" Merschat v. Merschat, 1 Ill App2d 429, 435, 117 NE2d 868.

■■■■ Applying these foregoing principles, we conclude that the instant Abe Weil conveyed the three parcels to Rudd, a resulting trust arose in favor of Weil. This holding is in accord with the settled principle that "[A] resulting trust (arises) wherever the circumstances surrounding the disposition of property raise an inference, not rebutted, that the transferor does not intend that the person taking or holding the property

. . . should have the beneficial interest therein." Belton v. Buesing (Ore), 402 P2d 98, 101 (1965).

The subsequent testimony of Rudd before the master confirms this "presumed intent" of Weil. Therefore, although the legal titles were placed in Rudd, the equitable titles and beneficial interests in the three parcels remained in Weil until his intestate death, when the beneficial interests descended in equal shares to his three heirs at law, his wife (Rose Weil) and his two daughters (Hortense and Jane).

We agree with defendants that the deed from Rudd to defendant, dated March 27, 1934, and recorded October 21, 1937, "cannot be set aside by the unsupported testimony of the grantor," and that Rudd, considered as a trustee, having divested himself of title by his absolute conveyance to defendant, could not convert the defendant into a trustee. See Stubbings v. Stubbings, 248 Ill 406, 412, 94 NE 54 (1911):

> "[T]he law is well settled that a trustee having once divested himself of all interest in the trust property by an absolute conveyance, it is no longer competent for him, either by parol or by written declaration, to convert a party taking under such conveyance into a trustee."

However, the quitclaim deed to the instant premises by Rudd to Jane, which was made pursuant to directions given Rudd by Rose Weil after the death of Abe Weil, was ineffective to convey the undivided one-third equitable or beneficial interest of her daughter Hortense. Rudd could not convey something he did not have—the equitable interest. His deed to Jane conveyed to Jane the legal title to her one-third interest, of which she already had the beneficial interest.

As to the beneficial interest of Rose, plaintiff claims that it passed intestate to her and Jane in

405

equal shares, unaffected by the deed of Rudd, and that the trial court should have decreed a one-half interest in plaintiff. We do not agree. While we cannot use Rudd's testimony to set aside the deed to Jane, his uncontradicted testimony shows that it was at Rose's request that the deeds were executed. Thus, the presumption is that Rose intended the conveyance to Jane to include Rose's one-third beneficial interest, and the testimony in the record of a later oral gift by Rose to Jane was merely a confirmation of this previous transaction. Where there is a conveyance to a child of a party furnishing the consideration, there is a presumption that the conveyance was intended as a gift to the child, and the burden is on those seeking to impose a trust to rebut the presumption by clear, convincing and satisfactory proof, and if the evidence is doubtful or capable of reasonable explanation of any other theory, this burden was not sustained. (Kraft v. Kretchman, 17 Ill2d 71, 76, 160 NE2d 806 (1959).) We conclude that plaintiff has not rebutted the presumption of a gift to Jane by Rose of her one-third beneficial interest. Therefore, Jane should be considered the legal and beneficial owner of an undivided two-third interest in the subject property.

As found and decreed by the trial court, "Hortense Steiner, since the death of her father, has been, and is now entitled to a one-third interest in said premises, together with one-third of the rents, issues and profits therefrom . . . ."

For the reasons given, the decree appealed from is affirmed and the cause is remanded for further proceedings in accordance with the views expressed herein.

Affirmed and remanded.

KLUCZYNSKI, P. J. and BURMAN, J., concur.