Bacia Gordon, Plaintiff-Appellee, v. Leo Gordon and Alex Gordon, Defendants-Appellants.

Gen. No. 53,241.

First District, Second Division.

July 22, 1969.

Rehearing denied September 9, 1969.

Samuel S. Cohon, of Chicago, for appellants.

191

Elmer Gertz and Claire I. Rosen, of Chicago (Wayne B. Giampietro, of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

Plaintiff brought an action in the Circuit Court of Cook County for the conveyance to her by defendants of their interest in certain real estate. The defendants filed a counterclaim alleging that they, along with their sister, are entitled to certain personal property in possession of plaintiff and praying for delivery thereof, as well as an accounting for any such property which may have been disposed of by plaintiff. By stipulation of the parties during the proceedings before the master, the question of an accounting was reserved pending a determination of the issue raised by plaintiff's defense to the counterclaim. The master made findings of fact favorable to plaintiff on her complaint as well as on the counterclaim and recommended that judgment be entered for her on both. The findings of the master were adopted by the chancellor, objections thereto having been overruled, and judgment was entered for plaintiff on both the original complaint and the counterclaim. Defendants appeal only from that portion of the judgment entered in favor of plaintiff on their counterclaim.

Bacia Gordon is the widow of Simon Gordon who died intestate. Defendants Leo and Alex Gordon are the brothers of the decedent. On April 28, 1962, one day prior to their marriage, Bacia Gordon and Simon Gordon entered into a prenuptial agreement which provided:

(1) Within 30 days after the marriage Simon was to convey certain real estate located in Chicago, Illinois, which was to be used as the marital domicile to himself and Bacia in joint tenancy.

(2) All other property of the parties was to remain their separate property, whether then owned or

thereafter acquired, with each party retaining the right to dispose of any such property free from any claim of the other which might otherwise arise by reason of their marital relationship.

(3) In the event that either party should die during the existence of the marital relationship, the marital domicile and its furnishings was to become the sole property of the survivor.

(4) The parties waived all right and interest, statutory or otherwise and including distribution in intestacy and widow's allowance, which might arise by reason of the marriage relationship.

(5) Each party reserved the right to transfer property to the other by will or otherwise, and each retained the right to receive such a transfer if made.

They were married on April 29, 1962, and Simon Gordon died intestate on May 1, 1962, before he had the opportunity to transfer the marital domicile into joint tenancy with Bacia Gordon as provided in the prenuptial agreement. The plaintiff is the sole taker of the property of the decedent under the statutory rules on descent and distribution (Ill Rev Stats, c 3, § 11).

In their counterclaim defendants alleged that they, along with their sister and plaintiff, constituted the sole heirs at law of Simon Gordon; that plaintiff has certain personal property belonging to Simon Gordon at the time of his death, consisting of certain objects of art (sculpture) created by him, to which she has no right or interest by reason of her having executed an express waiver of right to participate in the distribution in intestacy as part and parcel of the prenuptial agreement. The counterclaim further alleged that defendants and their sister are the sole owners of said personal property and are entitled to possession thereof as well as an accounting

for any such property which may have been disposed of by Bacia Gordon, plaintiff. The sister of defendants was not a party to this proceeding as she voluntarily deeded to plaintiff her interest in the realty which was the subject of plaintiff's complaint, that being the parcel described in the prenuptial agreement.

Plaintiff's answer to the counterclaim alleged that the personalty (sculpture) in question was given to her by Simon Gordon prior to his death. The master found that the gift had been made and recommended that judgment be entered for plaintiff on the counterclaim as well as on her complaint. The findings of the master were adopted by the chancellor and judgment was entered in accordance with the former's recommendations.

In this appeal defendants allege that plaintiff failed to meet her burden of proof with respect to her allegation that an inter vivos gift had been effected in that neither donative intent nor delivery have been shown. Citing Rinehart v. Rinehart, 14 Ill App2d 116, 143 NE2d 398 (1957); Dudley v. Uptown National Bank of Moline, 25 Ill App2d 514, 167 NE2d 257 (1960); In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445 (1955); Keshner v. Keshner, 376 Ill 354, 33 NE2d 877 (1941); Schramm v. Schramm, 13 Ill2d 281, 148 NE2d 799 (1958).

■■ Donative intent is an intention on the part of the donor that there be a present and irrevocable transfer of title to the subject matter of the gift. Delivery constitutes the means through which the intent of the donor is given effect. It consists of an irrevocable surrender of dominion and control over the subject matter of the gift to the donee or his agent.

To sustain her burden of proof as the party alleging a gift, plaintiff offered evidence consisting first of the testimony of David C. Ruttenberg, an attorney, who had known Simon Gordon for a number of years prior to the latter's death. Ruttenberg testified that he had represented decedent with respect to the prenuptial agree-

194

ment and at that time spoke to him about executing a will, and that decedent informed him there was no need for a will since he had given everything to his future wife as a gift. The witness further testified that when he asked decedent for a piece of sculpture in partial satisfaction of his fee, the decedent said that the matter would have to be taken up with Bacia Gordon. Finally, Ruttenberg testified that the reason for the reservation of rights by the parties in all property other than the real estate specifically named in the prenuptial agreement was to save certain property which plaintiff had acquired by reason of a previous marriage, for the issue of that marriage.

Plaintiff also produced Claire Rosen, an attorney, who testified that she had known decedent for a period of ten years and had represented Bacia Gordon with respect to and was scrivener of the prenuptial agreement. She testified that the agreement was executed in her presence and at the time of its execution she suggested to deceased that he execute a will; that he responded by informing her that his attorney had already made that suggestion and that he had informed his attorney that there was no need for a will since he had already given all of his property to Bacia Gordon, his future wife, as a gift, and that he did not want his family to have anything, as he owed them nothing.

Also called by plaintiff was Alice Shumacher, who testified that she was a student of Bacia Gordon. She testified that she attended art classes conducted by Bacia Gordon in April of 1962, and that the classes were conducted at a studio shared by decedent and Bacia Gordon. (The studio is the situs of the property which is the subject matter of defendant's counterclaim.) She also testified that she arrived early on one occasion, found the door to the studio to be locked, and gained entry after Bacia Gordon arrived and opened the door.

195

Plaintiff did not testify due to the disability imposed upon her by Ill Rev Stats, c 51, § 2, commonly known as the Dead Man's Act.

██ The evidence produced by plaintiff in the proceedings before the master established that she and Simon Gordon shared a studio for their respective professional activities and were to occupy a common domicile. In this factual situation we do not consider the fact that the property in question was not removed from the premises over which both decedent and plaintiff exercised control to be repugnant to a finding that a gift had been completed. Moreover, the statements attributed to the decedent by two of plaintiff's witnesses are clearly sufficient to establish both donative intent and the essence of delivery, i. e., the surrender by the donor of dominion and control over the subject matter of the gift in favor of the donee. Finally, plaintiff's witness Ruttenberg provided a reasonable explanation of the reservation of rights clause in the prenuptial agreement which is consistent with a determination that a gift had been made.

The master saw the witnesses and heard them testify. His report, adopted by the chancellor, contained a comprehensive review of the evidence and an evaluation of the testimony of each of the witnesses. The testimony of Leo Gordon, the only witness called by defendants, did not serve to contradict that of plaintiff's witnesses in any significant manner. The findings of the master are not manifestly against the weight of the evidence and are therefore not subject to reversal by a court of review. Kioutas v. City of Chicago, 59 Ill App2d 441, 208 NE2d 587 (1965) ; Michigan Mut. Liability Co. v. Type and Press Co. of Illinois, 62 Ill App2d 364, 210 NE2d 787 (1965). Accordingly the judgment must be affirmed.

Defendants have also asserted in their brief that the fee of the master is excessive. Despite the fact that this item is not included in their prayer for relief we have

reviewed the matter and find that the master's fee, as reduced by the chancellor, is not excessive.

Judgment affirmed.

BURKE and McCORMICK, JJ., concur.